

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00149-CV

———————————————

IN THE MATTER OF J.R.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-115225-21

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant J.R. appeals the juvenile court's order transferring him from the Texas Juvenile Justice Department (Juvenile Department) to the Institutional Division of the Texas Department of Criminal Justice (Criminal Department). *See* Tex. Fam. Code Ann. § 56.01. In a single issue, J.R. argues that the juvenile court committed harmful error by holding an untimely hearing on the Juvenile Department's transfer request and transferring him to the Criminal Department to complete his sentence instead of releasing him on parole. We hold that J.R. has not established harmful error, and we affirm the juvenile court's transfer order.

## I. Background

When J.R. was sixteen years old, the State filed a petition alleging that J.R. had engaged in delinquent conduct by committing three offenses of aggravated robbery with a deadly weapon. A grand jury approved a determinate sentence for J.R.'s delinquent conduct.[1] *See* Tex. Fam. Code Ann. § 53.045(a)(7). J.R. signed a stipulation of evidence, a judicial confession, and a disposition agreement. The juvenile court adjudicated J.R. of engaging in delinquent conduct by committing three counts of aggravated robbery with a deadly weapon, a first-degree felony. *See* Tex. Penal Code

---

[1] "In a determinate sentence situation, a juvenile is initially committed to the Texas Juvenile Justice Department with a possible transfer to the Texas Department of Criminal Justice." *In re R.C.*, 626 S.W.3d 76, 78 n.1 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Ann. § 29.03. The juvenile court ordered J.R. to serve a term of ten years "in the custody of the [Juvenile Department] with a possible transfer to the [Criminal Department]."

On November 29, 2022, the Juvenile Department recommended that J.R. be transferred to the Criminal Department based on the results of its "release review process." The Juvenile Department sent letters to the juvenile court on March 6, 2023, and March 9, 2023, informing the court that J.R. was eighteen years old, had not completed his ten-year sentence, and was "subject to a transfer/release hearing under Sections 244.014 and 245.051 [of the] Human Resources Code[] and Section 54.11 [of the] Family Code." *See* Tex. Hum. Res. Code Ann. § 244.014 (establishing requirements to refer determinate-sentence offenders for transfer to Criminal Department), § 245.051 (establishing requirements for releasing juveniles under supervision); Tex. Fam. Code Ann. § 54.11 (establishing procedures for release or transfer hearing). The Juvenile Department also recommended transferring J.R. to the Criminal Department and requested a hearing within sixty days.

The juvenile court held a transfer hearing on April 26, 2023, and ordered J.R. transferred "to the care, custody and control of the [Criminal Department] in accordance with the provisions of Section[] 245.151(c) of the Texas Human Resources Code, and [S]ection 54.11 of the Texas Family Code, . . . to serve the remainder of his sentence as required by law." This appeal followed.

## II. Standard of Review

Although we review a juvenile court's decision to transfer a juvenile from the Juvenile Department to the Criminal Department for an abuse of discretion, *In re A.M.*, No. 02-17-00029-CV, 2017 WL 2812452, at *5 (Tex. App.—Fort Worth June 29, 2017, no pet.) (mem. op.); *In re K.Y.*, 392 S.W.3d 736, 737 (Tex. App.—Dallas 2012, no pet.); *In re J.D.P.*, 149 S.W.3d 790, 792 (Tex. App.—Fort Worth 2004, no pet.), J.R. does not complain about the grounds for the juvenile court's transfer decision. Rather, he contends that the transfer order was invalid because the juvenile court failed to hold a timely transfer hearing. We review such issues under the criminal harmless-error analysis. *See In re C.O.S.*, 988 S.W.2d 760, 767–68 (Tex. 1999) (applying harm analysis to a juvenile court's failure to make explanations required by Section 54.03 of the Texas Family Code at the adjudication hearing's beginning); *In re C.O.*, No. 02-21-00235-CV, 2021 WL 5933796, at *4 (Tex. App.—Fort Worth Dec. 16, 2021, pet. denied) (mem. op.) (citing *C.O.S.* and acknowledging that the harmless-error analysis applies to a juvenile court's statutory error); *In re C.J.M.*, 167 S.W.3d 892, 895 (Tex. App.—Fort Worth 2005, pet. denied) ("[H]arm in juvenile appeals from determinate sentences should be analyzed under [Texas Rule of Appellate Procedure] 44.2.").

J.R. concedes that the alleged error is not constitutional. We disregard any nonconstitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the alleged error had a substantial and injurious effect or influence on the outcome. *Haley v. State*, 173 S.W.3d 510,

4

518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021).

## III.    Applicable Law

The Juvenile Department may refer a juvenile to the juvenile court for transfer to the Criminal Department if (1) the juvenile's conduct "indicates that the welfare of the community requires the transfer" and the juvenile (2) is between sixteen and nineteen years old, (3) is serving a determinate sentence, and (4) has not completed his sentence. Tex. Hum. Res. Code Ann. § 244.014(a). The juvenile court must set a hearing within sixty days of the referral. Tex. Fam. Code Ann. § 54.11(a), (h). In J.R.'s case, at the conclusion of the hearing, the juvenile court could either (1) order him returned to the Juvenile Department or (2) transfer him to the Criminal Department to complete his sentence. *See id.* § 54.11(i).

If the juvenile court ordered the juvenile to complete his sentence in the Criminal Department, the Juvenile Department would transfer him to the Criminal Department. *See* Tex. Hum. Res. Code Ann. § 245.151(c). If the juvenile court ordered the juvenile returned to the Juvenile Department, it could do so with or without approval to release him under supervision. *See* Tex. Fam. Code Ann. § 54.11(j). But the Juvenile Department "may not release the [juvenile] under supervision without approval of the

juvenile court" if the juvenile is serving a determinate sentence and has not completed the minimum term for his offense. *See* Tex. Hum. Res. Code Ann. § 245.051(c). If the juvenile court approved release on parole, then the Juvenile Department would transfer the juvenile on his nineteenth birthday to the Parole Division of the Criminal Department. *See id.* § 245.151(e).

## IV. Discussion

In his sole issue, J.R. contends that the juvenile court committed reversible error by holding the transfer hearing more than sixty days after the Juvenile Department's referral. He further contends that he was harmed by the error because it resulted in his transfer to the Criminal Department when he had a "right to be released on parole upon his 19th birthday."

The record reflects four occasions on which the Juvenile Department recorded its decision to transfer J.R. to the Criminal Department. Two of these appear in letters contained in the Juvenile Department's report of J.R.'s progress since his commitment to the Juvenile Department, which was admitted at the transfer hearing. The letters, dated November 29, 2022, and April 13, 2023, each contain only one sentence: "Based on the result of our release review process, the [Juvenile Department] recommends that it is in the best interest of the youth and the community to transfer [J.R.] to [the Criminal Department]." Neither letter contains a recipient's address or salutation but are addressed only: "To Whom It May Concern." Neither letter appears in the clerk's record.

The clerk's record contains two additional letters, dated March 6, 2023, and March 9, 2023, in which the Juvenile Department requested a transfer hearing under Section 54.11 of the Texas Family Code and Section 244.014 of the Texas Human Resources Code. The letters noted that J.R. would not complete the minimum sentence by his nineteenth birthday and cited Section 245.051's prohibition on releasing such individuals without court approval. The transfer hearing was held on April 26, 2023.

At the hearing, the juvenile court took judicial notice of the Juvenile Department's March 6, 2023 hearing request, and the Juvenile Department noted its November 29, 2022 decision to transfer J.R. to the Criminal Department as the reason for the transfer hearing. During its review of the Juvenile Department's report, the juvenile court noted the November 29, 2022 transfer recommendation and asked why it took so long for the March 6, 2023 hearing request to be sent to the juvenile court. The Juvenile Department's representative responded,

> So I don't know if you remember, but we did have a setting for [J.R.] in February after the law conference and because we were not able to get the materials together in time, we had to have it reset. So the original letter, I think, was dated maybe the beginning of January, and in order to meet the 60 days, we resent the letter.

The juvenile court replied that it "had forgotten that." The juvenile court then determined that J.R. did not qualify for parole and stated that it would order his transfer to the Criminal Department. It issued the transfer order on April 27, 2023.

The January 2023 letter referenced in the above colloquy does not appear in the record, and neither party mentions it on appeal. Regardless, the Juvenile Department

7

does not contest J.R.'s contention that it submitted a transfer hearing request to the juvenile court on November 29, 2022, despite the absence of any record that such a request was sent to or received by the court.[2] Thus, we will presume error and proceed with a harm analysis. *See In re K.H.*, No. 12-01-00342-CV, 2003 WL 744067, at *2 (Tex. App.—Tyler Mar. 5, 2003, no pet.) (mem. op.) (holding a juvenile court commits error by conducting a transfer hearing after the deadline).

J.R. contends that he was harmed by the juvenile court's untimely transfer hearing and resulting transfer order because he had a "right to be released on parole upon his 19th birthday" under Section 245.151(e) of the Texas Human Resources Code. Section 245.151(e) requires the Juvenile Department to

> transfer a person who has been sentenced under a determinate sentence to commitment under Section 54.04(d)(3), 54.04(m), or 54.05(f), Family Code . . . to the custody of the [Criminal Department] on the person's 19th birthday, if the person has not already been discharged or transferred, to serve the remainder of the person's sentence on parole.

Tex. Hum. Res. Code Ann. § 245.151(e). Because J.R. had not already been discharged or transferred, he contends that, but for the untimely transfer hearing, he would have been "entitled to serve the remainder of his determinate sentence on parole upon his 19th birthday".

---

[2]Despite this concession, the State argues that the hearing was timely because the Juvenile Department's subsequent notices extended the hearing deadline. The State offers no authority for this proposition. Thus, it has waived the argument. *See* Tex. R. App. P. 38.1(i), 38.2(a)(1).

Citing *In re B.T.*, No. 05-10-00977-CV, 2011 WL 2860107, at *1 (Tex. App.—Dallas July 20, 2011, no pet.) (mem. op.), and *K.H.*, 2003 WL 744067, at *2, the State contends that the untimely hearing does not affect the validity of the juvenile court's transfer order. But the hearings at issue in those cases began before the deadline and finished afterward. *B.T.*, 2011 WL 2860107, at *1; *K.H.*, 2003 WL 744067, at *2. The transfer hearing at issue here began *after* the deadline; thus, *B.T.* and *K.H.* are not helpful to our analysis. Additionally, regarding the transfer hearings' timeliness, the appellants in those cases asserted only that the juvenile courts lacked jurisdiction. *B.T.*, 2011 WL 2860107, at *1; *K.H.*, 2003 WL 744067, at *1. The parties here do not dispute the juvenile court's jurisdiction but question the effect of the untimely transfer hearing.

The court in *In re H.V.R.*, 974 S.W.2d 213, 216 (Tex. App.—San Antonio 1998, no pet.), addressed this question on facts like those at issue here. H.V.R. was assessed a twenty-five-year determinate sentence after pleading true to murder and attempted murder. *Id.* at 214. Under the applicable version of the Texas Family Code, the juvenile court was required to hold a transfer hearing at least thirty days before H.V.R.'s eighteenth birthday. *Id.* (citing Act of June 17, 1987, 70th Leg., R.S., ch. 385, § 13, 1987 Tex. Gen. Laws 1891, 1896 (amended 2021) (current version at Tex. Fam. Code Ann. § 54.11(h)). Although H.V.R.'s transfer hearing was scheduled before the deadline, icy roads prevented the deputy sheriff from transporting H.V.R. for several days, and the hearing was held twenty-seven days before H.V.R.'s eighteenth birthday. *Id.* On appeal from the juvenile court's order transferring H.V.R. to the Criminal

Department, H.V.R. argued that the juvenile court lacked jurisdiction to issue its order because the transfer hearing was untimely. *Id.* He alternatively argued that the juvenile court erred by holding the untimely hearing and that he was harmed by the resulting transfer. *Id.* at 216–17.

The San Antonio Court of Appeals analyzed the public policy behind Title 3 of the Texas Family Code, noting that, "consistent with its dominant purpose of protecting the community welfare," the Texas Legislature amended Title 3 in 1987 to permit juvenile courts to assess determinate sentences when a juvenile has committed an enumerated first-degree felony offense. *Id.* at 215 (citing Tex. Fam. Code Ann. § 51.01, § 54.04(d)(3)). Under the determinate-sentencing scheme, the Juvenile Department could transfer the juvenile to the Criminal Department to serve the remainder of his sentence. *Id.* Transfer is not automatic, however, and the transfer hearing is the juvenile's "second chance to persuade the court that he should not be imprisoned." *Id.* at 215–16 (quoting *In re D.S.*, 921 S.W.2d 383, 386 (Tex. App.—Corpus Christi–Edinburg 1996, writ dism'd w.o.j.)).

The court found that H.V.R.'s statutory interpretation was "unreasonable and entirely inconsistent with the legislative intent" to entrust a juvenile to the Juvenile Department, rather than state prison, "during his juvenile years" but then transfer him to "the adult criminal justice system to complete his determinate sentence as soon as possible after he becomes an adult if and when imprisonment becomes appropriate and necessary for the protection of the public welfare." *Id.* at 217. Thus, the court held that

the hearing deadline was not jurisdictional and that "a juvenile court's failure to hold a [timely transfer] hearing . . . constitutes error but not fundamental error." *Id.*

Addressing H.V.R.'s harm argument, the court noted that the only harm asserted was that the error "deprived [H.V.R.] of his right to remain in [the Juvenile Department] until he is discharged on his twenty-first birthday." *Id.* Under the applicable version of the Human Resources Code, the Juvenile Department was required to "discharge from its custody a person not already discharged or transferred on the person's 21st birthday." Act of June 15, 1991, 72nd Leg., R.S., ch. 574, 1991 Tex. Gen. Laws 2054 (originally codified at Tex. Hum. Res. Code Ann. § 61.084(d)) (current version at Tex. Hum. Res. Code Ann. § 245.151(e)) (requiring any person not already transferred or discharged to be transferred to the Criminal Department on the person's nineteenth birthday to serve the remainder of his determinate sentence on parole). The court rejected H.V.R.'s argument because it implicitly assumed that the juvenile court's transfer order was void for lack of jurisdiction, and H.V.R. did not allege any other harm. *H.V.R.*, 974 S.W.2d at 217. Thus, the court affirmed the juvenile court's transfer order. *Id.*

Although J.R. does not raise the same jurisdictional issue as H.V.R. did, he alleges the same harm: being deprived of the "right" to avoid prison. *See id.* The State contends that this is tantamount to a jurisdictional issue because the relief would be the same: voiding the juvenile court's transfer order because the hearing was untimely. We agree with the *H.V.R.* court's reasoning that voiding a transfer order solely because of an

11

untimely transfer hearing would contradict public policy. *See id.* J.R. has alleged no harm other than the transfer order itself. Thus, he has failed to establish a reversible error. *See id.*

Regardless, J.R.'s harm allegation incorrectly assumes that he would be automatically released on parole if the transfer order was voided. The State makes this same error and argues that "it would not be in the best interest of justice to allow the person to serve the remainder of the person's sentence on parole." To the contrary, J.R.'s release was not automatic.

J.R. was committed to the Juvenile Department on May 14, 2021, for a ten-year determinate sentence for committing three first-degree felonies. Under Section 245.051(c)(2), if a juvenile is committed to the Juvenile Department under a determinate sentence such as J.R.'s, the Juvenile Department "may not release the [juvenile] under supervision without approval of the juvenile court that entered the order of commitment unless the child has served at least . . . 3 years, if the child was sentenced to commitment for conduct constituting . . . a felony of the first degree." Tex. Hum. Res. Code Ann. § 245.051(c)(2). Thus, J.R.'s minimum sentence was three years. *See id.*

The record reflects that J.R. would not complete his minimum sentence by his nineteenth birthday. Thus, the Juvenile Department could not release J.R. on his nineteenth birthday without the juvenile court's approval. *See id.*; *see also In re J.B.L.*, 318 S.W.3d 544, 549 (Tex. App.—Beaumont 2010, pet. denied) (holding under the prior version of the statute that court approval was required for the Juvenile

Department to release a juvenile on parole if he had not served the minimum sentence); *In re D.A.B.*, No. 06-10-00069-CV, 2010 WL 4922995, at \*1 (Tex. App.—Texarkana Dec. 2, 2010, no pet.) (mem. op.) (same). Accordingly, J.R. was not "entitled to serve the remainder of his determinate sentence on parole upon his 19th birthday," as he contends. Because J.R. has failed to establish that he was harmed by the juvenile court's untimely transfer hearing, we overrule his sole issue.

## V. Conclusion

Having overruled J.R.'s sole issue, we affirm the juvenile court's transfer order.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: October 12, 2023

13